| | |
|---|---|
| SONYA L. ROBINSON, | ) |
| | ) |
|     PLAINTIFF, | ) |
| | ) |
| v. | ) |
| | ) |
| ONEMAIN FINANCIAL, INC., | ) |
| FORMERLY KNOWN AS | ) |
| CITIFINANCIAL, INC. | )   Civil Action No. _____ |
| Please serve through Registered Agent: | ) |
|     C T Corporation System | ) |
|     800 S Gay St | ) |
|     Ste 2021 | ) |
|     Knoxville, TN  37929 | ) |
| | ) |
|     DEFENDANT. | ) |

## COMPLAINT

### INTRODUCTION

Plaintiff Sonya L. Robinson brings this Complaint against Defendant OneMain Financial, Inc., formerly known as CitiFinancial, Inc., to seek relief for racial discrimination and retaliation under Title VII of the Civil Rights Act of 1964, as amended, and the Tennessee Human Rights Act, as amended.

### PARTIES

1. Ms. Robinson is and has at all times relevant to this action been a citizen of the State of Tennessee. Ms. Robinson resides in Franklin County, Tennessee.

2. Formerly known as CitiFinancial, Inc., OneMain Financial provides community-based lending services through a branch network system. CitiFinancial announced its new name in December of 2010. According to its website, OneMain, which traces its roots to the founding

in 1912 of Commercial Credit, lends "money for life's emergencies," such as car repairs, furniture purchases, vacations and medical bills as well as debt-consolidation loans that can be used to pay off credit cards and other bills. OneMain is based in Baltimore, Maryland and has 1,300 branches nationwide. Ms. Robinson worked in the Tullahoma, Tennessee branch of OneMain. At all times relevant to this Complaint, OneMain was known as CitiFinancial, therefore, the company will be referred to by its former name, CitiFinancial, in the remaining provisions of this Complaint.

## JURISDICTION AND VENUE

3. This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Title VII), as amended, and the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101 et seq., as amended.

4. CitiFinancial is an "employer" subject to the provisions of Title VII because, as defined in 42 U.S.C. § 2000e, it is (i) a person engaged in an industry affecting commerce (ii) who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

5. This action is brought under Title VII of the Civil Rights Act of 1964, as amended, and the Tennessee Human Rights Act, as amended, for employment discrimination and retaliation. Jurisdiction and venue exist by virtue of 42 U.S.C. § 2000e-5(f)(3).

6. Within 300 days of the adverse action taken against Ms. Robinson by CitiFinancial, Ms. Robinson filed a charge of discrimination with the U.S. Equal Employment Opportunity (EEOC) Commission against CitiFinancial.

7. Ms. Robinson received a notice of right to sue by the EEOC and has filed this Complaint within 90 days of receiving that notice.

## FACTS AND ALLEGATIONS

8. The discriminatory conduct occurred in connection with Ms. Robinson's employment at CitiFinancial, where Ms. Robinson was employed as a Branch Manager/Assistant Vice President.

9. Ms. Robinson is an African American adult female.

10. Ms. Robinson was in the U.S. Marine Corps from 1981 to 1985.

11. While in the military, Ms. Robinson took a few college courses; however, she obtained the majority of her financial education on the job.

12. Following an honorable discharge from the Marine Corps in 1985, Ms. Robinson worked in the financial industry for about 9 years before joining CitiFinancial, now known as OneMain Financial, in July of 1996 as a Customer Service Representative.

13. During the course of her employment, Ms. Robinson was eventually promoted to a branch manager position for which she was well-qualified.

14. CitiFinancial paid Ms. Robinson a base salary plus an annual bonus.

15. During her tenure with CitiFinancial, Ms. Robinson received regular performance evaluations that were consistently at or above average. As a manager, her recent performance review rating was consistently "effective" or "highly effective."

16. At all times relevant to this complaint, Ms. Robinson's manager was Ed Vandeveire, a white adult male. Vandeveire's title at CitiFinancial was District Manager.

17. Ms. Robinson was the only African American management employee in Vandeveire's district.

18. Vandeveire became Robinson's manager on July 20, 2010.

19. Vandeveire's office is in Knoxville, Tennessee, and he would visit monthly the Tullahoma branch where Ms. Robinson worked.

20. Ms. Robinson's first conversation with Vandeveire following her assignment to him took him took place over the telephone. In that conversation, Vandeveire informed Ms. Robinson that if he caught her doing anything wrong, he would "bury her."

21. Ms. Robinson was immediately alarmed by the comment and followed up with a few other similarly-situated branch managers in her district, who were all white, to ask if Vandeveire had made the same comment to any of them; and they all told her that he had not made any comment like that to any of them.

22. In September of 2010, Josh Nickerson, a white branch manager sent Ms. Robinson a mass email that was offensive to her as an African American. She responded "to all" and Nickerson that she believed that the email was offensive and inappropriate for work. Following her response to the email, Vandeveire issued a "Letter of Mutual Respect" to her for participating in the distribution of an inappropriate email chain. Upon information and belief, Vandeveire also issued a "Letter of Mutual Respect" to Nickerson.

23. Sometime around August or September of 2010, some disgruntled customers made complaints regarding adjustment of terms (or AOTs) that Ms. Robinson's branch had processed.

24. By way of background, AOTs are routinely granted for customers that are experiencing some financial hardship; under an AOT, the customer can receive a 6-month adjustment of the terms of his or her loan.

25. The way in which an AOT typically occurs is that a branch manager, like Ms. Robinson, will propose an AOT to the district manager, like Vandeveire, who will then sign off

on the AOT. An AOT should be a collaborative process between the branch manager and the district manager.

26. Upon information and belief, issues like a customer complaint pertaining to an AOT would typically be reviewed in a district manager review, which occurred on a monthly basis. If a district manager had any concerns based on his or her review of customer complaints about an AOT, the district manager would issue a write up to the branch manager.

27. In Ms. Robinson's case, however, Vandeveire initiated an internal fraud investigation at her branch based on the customer complaints pertaining to the AOTs. During Ms. Robinson's tenure at CitiFinancial, she is not aware of an internal fraud investigation taking place in response to customer complaints.

28. Ms. Robinson believed that her branch was unfairly targeted by Vandeveire for the fraud investigation based on Ms. Robinson's race.

29. Under the Code of Conduct and Employee Handbook issued to CitiFinancial employees, if an employee believes that she is being subjected to discrimination, she should report it to her "supervisor," "manager," "another member of your management chain," "senior business manager," "human resources representative," or to the "Citi Ethics Hotline." The Employee Handbook states that an employee is not required to report her complaint to anyone who is the subject of it.

30. Pursuant to this policy, in October of 2010, Ms. Robinson contacted Mickle Blalock, who was the area director and to whom Vandeveire reported, by telephone to report her belief that she was being subjected to racial discrimination by Vandeveire. Blalock replied that he would speak with Vandeveire and look into her complaint further.

31. No one from CitiFinancial contacted her regarding her complaint to Blalock. Upon information and belief, CitiFinancial did not investigate her complaint pursuant to its Code of Conduct nor did the company take any corrective action.

32. Around the first week of November of 2010, Vandeveire came to the Tullahoma branch to report to the branch employees on the internal fraud investigation. He met with each employee one-on-one, and then he brought all the employees together as a group. Vandeveire told all of the employees that the fraud investigation was over and that there was nothing to worry about. He said that it had come down to a "he said, she said" scenario.

33. As to Ms. Robinson, Vandeveire told Ms. Robinson that he wanted to "close the year strong." He also told her to get ready for the manager's meeting in North Carolina in early 2011.

34. Upon information and belief, if the fraud investigation had revealed any violation of CitiFinancial's policies and procedures, then either Ms. Robinson or her direct reports would have been written up. Vandeveire did not issue Ms. Robinson a write-up pertaining to the fraud investigation; and Vandeveire did not direct Ms. Robinson to issue write-ups to any of her direct reports pertaining to the fraud investigation.

35. About a week later, which was the second week of November of 2010, Vandeveire contacted Ms. Robinson by telephone for the monthly reports and numbers of her branch. In that conversation, Vandeveire's tone with Ms. Robinson was belittling. She asked him if he had a problem with the color of her skin, and she told him that she had observed that he had never hired an African American employee or had an African American employee other than her. She also asked him outright if he was a racist.

36. Upon information and belief, about a week after Ms. Robinson's conversation with Vandeveire, he hired the only African American employee that he has ever hired.

37. On November 30, 2010, Vandeveire made an unscheduled visit to the Tullahoma branch. When he arrived at the branch, Ms. Robinson asked to speak with him, to which he replied, "not yet." Vandeveire went to a phone and then called for Ms. Robinson. When she reported to him, he said, "I've got Jen Hochrin from Human Resources on the phone. You're fired." The reason was that she violated policy. He gave her no further explanation of what policy she had violated.

38. Upon information and belief, Ms. Robinson's position was filled by a white manager.

39. Upon information and belief, the articulated reason that she had violated an unspecified policy was pretextual, and Ms. Robinson's employment was actually terminated because of her race and her complaints of racial discrimination.

## COUNT I
## RACIAL DISCRIMINATION
## IN VIOLATION OF
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964,
## AS AMENDED, 42 U.S.C. § 2000e ET SEQ.

40. Ms. Robinson incorporates the facts and allegations contained in the previous paragraphs of this Complaint as though set forth fully herein.

41. CitiFinancial, at all times relevant to this Complaint, has employed 15 or more persons on a regular basis including Ms. Robinson.

42. During the course of her employment, Ms. Robinson was eventually promoted to a branch manager position for which she was well-qualified. For example, as a manager, her recent performance review rating was consistently "effective" or "highly effective."

43. CitiFinancial engaged in conduct which violated 42 U.S.C. § 2000e-2(a)(1) by: (i) warning her that she would be "buried" if it was determined that she did anything wrong; (ii) issuing a Letter of Mutual Respect to Ms. Robinson for responding to an email that was

offensive to her as an African American; (iii) subjecting Ms. Robinson and the Tullahoma branch to an internal fraud investigation based on customer complaints; and (iv) terminating Ms. Robinson's employment for violating unspecified policies after she complained of racial discrimination.

44. Upon information and belief, Vandeveire did not warn any of the similarly-situated white branch managers that he would "bury" them if he caught the manager doing anything wrong.

45. Upon information and belief, customer complaints of the type made against her branch are common to all branches, yet branches having white managers have never been subjected to an internal fraud investigation over these types of customer complaints.

46. CitiFinancial singled out Ms. Robinson for discharge for an impermissible reason -- her race.

47. Upon information and belief, the articulated reason that she had violated an unspecified policy was pretextual, as Vandeveire informed Ms. Robinson and her direct reports in early November that they had nothing to worry about as a result of the internal fraud investigation. Further, Vandeveire instructed Ms. Robinson to prepare for the manager's meeting in North Carolina in early 2011.

48. As a result of CitiFinancial's racial discrimination against Ms. Robinson, Ms. Robinson suffered the loss of her wages, benefits, and other economic benefits of employment.

# COUNT II
# RETALIATION
# IN VIOLATION OF
# TITLE VII OF THE CIVIL RIGHTS ACT OF 1964,
# AS AMENDED, 42 U.S.C. § 2000e ET SEQ.

49. Ms. Robinson incorporates the facts and allegations contained in the previous paragraphs of this Complaint as though set forth fully herein.

50. CitiFinancial, at all times relevant to this Complaint, has employed 15 or more persons on a regular basis including Ms. Robinson.

51. Pursuant to the personnel policies and procedures of CitiFinancial, in October of 2010, Ms. Robinson contacted Mickle Blalock, who was the area director and to whom Vandeveire reported, by telephone to report her belief that she was being subjected to racial discrimination by Vandeveire. Her complaint of racial discrimination to CitiFinancial upper-management is protected by 42 U.S.C. § 2000e-3(a). Ms. Robinson further addressed her concerns of racial discrimination directly to Vandeveire, which is also protected by 42 U.S.C. § 2000e-3(a).

52. Thereafter, CitiFinancial terminated her employment, which constitutes adverse employment action against Ms. Robinson.

53. CitiFinancial took this adverse employment action against Ms. Robinson because of and in retaliation for her complaints of racial discrimination. The retaliatory nature of CitiFinancial's conduct is demonstrated by the lapse of time between the conclusion of the fraud investigation and her eventual termination and the close proximity of the termination to her complaint of racial discrimination to Vandeveire.

# COUNT III
# RACIAL DISCRIMINATION
# IN VIOLATION OF
# THE TENNESSEE HUMAN RIGHTS ACT,
# TENN. CODE ANN. § 4-21-101 ET SEQ.

54. Ms. Robinson incorporates the facts and allegations contained in the previous paragraphs of this Complaint as though set forth fully herein.

55. CitiFinancial, at all times relevant to this Complaint, has employed 8 or more persons on a regular basis including Ms. Robinson.

56. During the course of her employment, Ms. Robinson was eventually promoted to a branch manager position for which she was well-qualified. For example, as a manager, her recent performance review rating was consistently "effective" or "highly effective."

57. CitiFinancial engaged in conduct which violated Tenn. Code Ann. § 4-21-101 et seq. by: (i) warning her that she would be "buried" if it was determined that she did anything wrong; (ii) issuing a Letter of Mutual Respect to Ms. Robinson for responding to an email that was offensive to her as an African American; (iii) subjecting Ms. Robinson and the Tullahoma branch to an internal fraud investigation based on customer complaints; and (iv) terminating Ms. Robinson's employment for violating unspecified policies after she complained of racial discrimination. These actions by CitiFinancial have had the effect of inflicting severe emotional distress upon Ms. Robinson.

58. Upon information and belief, Vandeveire did not warn any of the similarly-situated white branch managers that he would "bury" them if he caught the manager doing anything wrong.

59. Upon information and belief, customer complaints of the type made against her branch are common to all branches, yet branches having white managers have never been subjected to an internal fraud investigation over these types of customer complaints.

60. CitiFinancial singled out Ms. Robinson for discharge for an impermissible reason -- her race.

61. Upon information and belief, the articulated reason that she had violated an unspecified policy was pretextual, as Vandeveire informed Ms. Robinson and her direct reports in early November that they had nothing to worry about as a result of the internal fraud investigation. Further, Vandeveire instructed Ms. Robinson at that time to prepare for the manager's meeting in North Carolina in early 2011.

62. As a result of CitiFinancial's racial discrimination against Ms. Robinson, Ms. Robinson suffered the loss of her wages, benefits, and other economic benefits of employment.

**COUNT IV**
**RETALIATION**
**IN VIOLATION OF**
**THE TENNESSEE HUMAN RIGHTS ACT,**
**TENN. CODE ANN. § 4-21-101 ET SEQ.**

63. Ms. Robinson incorporates the facts and allegations contained in the previous paragraphs of this Complaint as though set forth fully herein.

64. At all times relevant to this Complaint, Ms. Robinson was a member of a protected class and was engaged in a protected activity while employed by CitiFinancial.

65. Pursuant to the personnel policies and procedures of CitiFinancial, in October of 2010, Ms. Robinson contacted Mickle Blalock, who was the area director and to whom Vandeveire reported, by telephone to report her belief that she was being subjected to racial discrimination by Vandeveire. Her complaint of racial discrimination to CitiFinancial upper-

237806                                11
Case 4:11-cv-00064-HSM-SKL   Document 1   Filed 11/15/11   Page 11 of 13   PageID #: 11

management is protected by Tenn. Code Ann. § 4-21-301(1). Ms. Robinson further addressed her concerns of racial discrimination directly to Vandeveire, which is also protected by Tenn. Code Ann. § 4-21-301(1).

66. Thereafter, CitiFinancial terminated her employment, which constitutes adverse employment action against Ms. Robinson.

67. CitiFinancial took this adverse employment action against Ms. Robinson because of and in retaliation for her complaints of racial discrimination. The retaliatory nature of CitiFinancial's conduct is demonstrated by the lapse of time between the conclusion of the fraud investigation and her eventual termination and the close proximity of the termination to her complaint of racial discrimination to Vandeveire.

## PRAYER

WHEREFORE, Plaintiff, Sonya L. Robinson, prays for relief as follows:

A. That this Court declare that the Defendant violated her rights with regard to racial discrimination and retaliation under Title VII of the Civil Rights Act of 1964, as amended, and the Tennessee Human Rights Act, as amended;

B. That this Court enter a judgment against Defendant for all damages allowable to Plaintiff;

C. That this Court enter a judgment against Defendant for all legal or equitable relief as may be appropriate, including without limitation a judgment compelling employment, reinstatement, promotion, or front pay if the Court determines that reinstatement is not feasible;

D. That this Court enter a judgment against Defendant for Plaintiff's back pay which (i.) encompasses the wages and benefits Plaintiff would have received in compensation but for Defendant's violations and (ii.) includes prejudgment interest, lost wages, pension, insurance, vacation, profit-sharing, accrued sick leave, and other economic benefits of employment;

E. That this Court enter a judgment against Defendant for embarrassment and humiliation;

F. That this Court order injunctive relief as necessary and appropriate;

G. That this Court award to Plaintiff reasonable attorneys' fees, costs and expenses; and

H. That this Court grant such other relief as may be just and proper as provided by law.

DATED: November 15, 2011

Respectfully submitted,

*/s/ James G. Stranch, III*_____
James G. Stranch, III, # 2542
Branstetter, Stranch & Jennings, PLLC
227 Second Avenue North, Fourth Floor
Nashville, Tennessee 37201-1631
(615) 254-8801
jims@branstetterlaw.com

*Attorneys for Sonya L. Robinson*